### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**LARRY E. NEWBERRY,**

        **Plaintiff,**

**v.**                                        **Case No. 3:18-cv-01317**

**KIM WOLFE; WEST VIRGINIA
DIVISION OF CORRECTIONS AND
REHABILITATION; THE VILLAGE OF
BARBOURSVILLE, WEST VIRGINIA;
STATE OF WEST VIRGINIA; COUNSELOR
STEPP; COUNSELOR PHILLIPS;
and SARGENT DIAMOND,**

        **Defendants.**

### PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

On October 19, 2018, Plaintiff Larry E. Newberry ("Plaintiff"), proceeding *pro se* and then incarcerated at the Martinsburg Correctional Center in Martinsburg, West Virginia, filed an amended complaint pursuant to 42 U.S.C. § 1983 against Kim Wolfe, the West Virginia Division of Corrections and Rehabilitation ("DOC"), The Village of Barboursville, the State of West Virginia, and two counselors and one correctional officer from the Western Regional Jail ("WRJ") in Barboursville, West Virginia. (ECF No. 12). Plaintiff alleges a variety of constitutional violations related to the conditions of confinement at the WRJ, including, (1) that he was confined to a segregation unit without just cause; (2) that he was exposed to deplorable living conditions resulting in him contracting Hepatitis B; (3) that he was not given timely medical treatment for his

Hepatitis B; and (4) that the defendants failed to protect him, exposing him to assaults by other inmates. Plaintiff seeks compensatory and punitive damages from the defendants. (*Id.*).

Currently pending are a Motion to Dismiss filed by Defendants Wolfe, State of West Virginia, the DOC, Diamond, Stepp and Phillips, (ECF No. 27), a Rule 12(b)(6) Motion to Dismiss filed by The Village of Barboursville, (ECF No. 31), and a Motion by Defendants Wolfe, State of West Virginia, the DOC, Diamond, Stepp and Phillips to Designate their Motion to Dismiss as Unopposed and to Dismiss the Complaint for Failure to Comply with the Order of the Court, (ECF No. 35). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the motions, the undersigned **FINDS** that the amended complaint, at least in part, states claims against Defendants who are entitled to immunity under the Eleventh Amendment to the United States Constitution, and fails to state a plausible claim against The Village of Barboursville.

Accordingly, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the following findings and **RECOMMENDS** that the Motion to Dismiss filed by Defendants Wolfe, State of West Virginia, the DOC, Diamond, Stepp and Phillips, (**ECF No. 27**), be **GRANTED,** in part, and **DENIED**, in part; the Rule 12(b)(6) Motion to Dismiss filed by The Village of Barboursville, (**ECF No. 31**), be **GRANTED**; and the Motion by Defendants Wolfe, State of West Virginia, the DOC, Diamond, Stepp and Phillips to Designate their Motion to Dismiss as Unopposed and to Dismiss the Complaint for Failure to Comply with the Order of the Court, (**ECF No. 35**),

be **DENIED**. The undersigned further **RECOMMENDS** that the claims against the DOC, the State of West Virginia, and The Village of Barboursville be **DISMISSED**, and those defendants be **REMOVED** from the style of the case; and that the claims against Defendants Wolfe, Stepp, Phillips, and Diamond in their official capacities be **DISMISSED,** but that the claims against Defendants Wolfe, Stepp, Phillips, and Diamond in their personal capacities **REMAIN PENDING** to allow the parties an opportunity to conduct discovery.

I.    **Relevant Facts and Procedural History**

On October 19, 2018, Plaintiff filed an Application to Proceed Without Prepayment of Fees and Costs, as well as an amended complaint related to his experiences at the WRJ. On October 22, 2018, Plaintiff's application was granted and summonses were issued by the Clerk of Court. (ECF Nos. 13, 14, 15, 16, 17, 18, 19, 20). The United States Marshals Service effected service of process on the defendants. On December 3, 2018, Defendants Wolfe, State of West Virginia, the DOC, Diamond, Stepp and Phillips filed an answer to the amended complaint, followed on December 14, 2018 by a Motion to Dismiss and supporting memorandum filed on December 14, 2018. (ECF Nos. 26, 27, 28). On December 21, 2018, The Village of Barboursville filed its own Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (ECF No. 31).

The undersigned issued Orders, advising Plaintiff of his right to respond to the pending dispositive motions and setting a briefing schedule. (ECF Nos. 29, 32). However, instead of filing responses in opposition to the motions, Plaintiff filed a motion seeking the appointment of counsel. (ECF No. 34). Shortly thereafter, Defendants Wolfe, State of West Virginia, the DOC, Diamond, Stepp, and Phillips filed a motion asking the Court to designate their Motion to Dismiss as unopposed and to dismiss the complaint against

them for Plaintiff's failure to comply with the Court's Order. (ECF No. 35).

On April 12, 2019, Plaintiff notified the Court that he had been released from custody and was now residing in Hurricane, West Virginia. Accordingly, the undersigned set the case for an initial status conference and motions hearing. (ECF Nos. 37, 38). The status conference and motions hearing proceeded as scheduled on April 24, 2019. (ECF No. 39). Plaintiff's request for the appointment of counsel was denied, and the undersigned issued a Scheduling Order. (ECF No. 41). With respect to the pending motions, the undersigned queried Plaintiff about his claims against the defendants and allowed the parties to argue their positions. The motions were taken under advisement.

## II.    **Standard of Review**

Defendants Wolfe, State of West Virginia, the DOC, Diamond, Stepp and Phillips move to dismiss the complaint on the basis of Eleventh Amendment sovereign immunity. Defendants describe their Motion to Dismiss as one filed pursuant to Fed. R. Civ. P. 12(b)(6), however, "[t]he Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6)." *Haley v. Virginia Dept. of Health*, Case No. 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D. Va. Nov. 13, 2012) (citing *Andrews v. Daw,* 201 F.3d 521, 525, n.2 (4th Cir. 2000)). "The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Id.; see also Zemedagegehu v. Arthur*, No. 1:15cv57, 2015 WL 1930539, at *3 (E.D. Va. Apr. 28, 2015); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. Oct. 17, 2012) (collecting cases). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the dispute. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)

A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Adams,* 697 F.2d at 1219. In that case, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams,* 697 F.2d at 1219). Second, the movant may contend, as Defendants do here, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson*, 905 F.Supp.2d at 719. However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

The Village of Barboursville argues that the amended complaint fails to state a plausible claim against it, entitling it to dismissal under Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating "to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the amended complaint are true and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party. *Burbach*, 278 F.3d at 405–06. The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480,

483 (4th Cir. 2006). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.'" Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) quoting *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988) (internal quotation marks omitted) (emphasis in original).

While the Court "take[s] the facts in the light most favorable to the [P]laintiff, ... [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

When a motion to dismiss under Rule 12(b)(6) is filed simultaneously with or after an answer, the motion is treated as a Rule 12(c) motion for judgment on the pleadings. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002). Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the

pleadings." A motion for judgment on the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *Id.* at 405–06. Therefore, regardless of whether Defendants' motion is properly filed under Rule 12(b)(1), 12(b)(6), or 12(c), the same standard of review will apply.

The only relevant difference between a motion under Rule 12(b)(6) and one under Rule 12(c) is that "on a Rule 12(c) motion the court may consider the Answer as well." *Alexander v. City of Greensboro*, No. 1:09–CV–293, 2011 WL 3360644, at *2 (M.D.N.C. August 3, 2011). The "factual allegations in the [A]nswer are taken as true, to the extent they have not been denied or do not conflict with the [C]omplaint." *Farmer v. Wilson Hous. Auth.*, 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004) (internal quotations and citations omitted). "[W]hen deciding a 12(c) motion, the court may consider 'the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, [and] whatever is central or integral to the claim for relief or defense.'" *Proffitt v. Bristol-Myers Squibb Co., No.* CV 1:17-04391, 2018 WL 3318893, at *2 (S.D.W. Va. July 5, 2018) (quoting *In re Coloplast Corp. Pelvic Support Sys. Prod. Liab. Litig.*, 219 F. Supp. 3d 577, 579 (S.D.W. Va. 2016)).

Plaintiff filed his amended complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the amended complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the

7

court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  <u>Discussion</u>

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C.A. § 1983. Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of State law. *Perrin v. Nicholson*, C/A No. 9:10-1111-HFF-BM, 2010 WL 3893792, at *2 (D.S.C. Sept. 8, 2010); *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Sullivan*, 526 U.S. at 50.

### A. Motion to Dismiss of State of West Virginia and the DOC

The State of West Virginia and the DOC argue that they are entitled to dismissal based on the principle of sovereign immunity found in the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in

law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the Supreme Court of the United States ("Supreme Court") has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will* 491 U.S. at 70); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). It is well established that the DOC is an "arm" of the State of West Virginia and therefore is entitled to the same immunity from suit in federal court as the State itself. *Basham v. Corr. Med. Servs., Inc.*, No. CIV A 506-CV-00604, 2007 WL 2481338, at *3 (S.D.W. Va. Aug. 29, 2007) ("[I]n West Virginia, the Division of Corrections is an arm of the state and is therefore immune from suit under the Eleventh Amendment."); *Rakes v. Rush*, No. CIV.A. 2:09-018, 2009 WL 2392097, at *7 (S.D.W. Va. Aug. 4, 2009) ("Indeed, the Division of Corrections is an arm of the State of West Virginia and is not a proper defendant to a § 1983 claim.") (citations omitted).

Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir.2012). First, the State may

waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia and its agencies have not waived sovereign immunity in this type of suit, and there is no indication that they are inclined to do so now. *See Kinder*, 2015 WL 1276748, at *7; *Skaggs*, 2014 WL 66645, at *5; *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013); *Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992). Consequently, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73). In *Will*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual

constitutional balance between the States and the Federal Government … unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). The state officer being sued must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective

11

relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the State of West Virginia and the DOC are not state officers, the third exception to Eleventh Amendment immunity is likewise inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that lawsuit must name state official as defendant, not state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction"). Moreover, Plaintiff has not asserted a claim for prospective injunctive relief, making this exception moot.

In sum, since none of the exceptions apply, the undersigned **FINDS** that the State of West Virginia and the DOC are shielded by the Eleventh Amendment's sovereign immunity from Plaintiff's claims; therefore, they should be dismissed from this civil action and removed from the style of the case.[1]

### B. Motion to Dismiss of Wolfe, Stepp, Phillips, and Diamond

As to Plaintiff's claims against Defendants Wolfe, Stepp, Phillips, and Diamond, the undersigned next considers Defendants' argument that they are likewise immune

---

[1] Defendants also assert that Plaintiff sued the wrong party, because he was in the custody of the West Virginia Regional Jail and Correctional Facility Authority at the time the events described in the complaint occurred. It is unclear from the record when Plaintiff's stay at the Western Regional Jail ended and whether any of the incidents alleged in the complaint occurred on or after July 1, 2018. However, the Authority was subsumed into the West Virginia Division of Corrections effective July 1, 2018 and together they were renamed the DOC. To avoid confusion, and because the name of the agency is not crucial to the findings and recommendations, the undersigned does not address this argument.

from suit under the Eleventh Amendment. As discussed above, in *Will,* the Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of Rev. Stat. § 1979, 42 U.S.C. § 1983." *Will*, 491 U.S. at 60. Examining the language and purpose of the statute, the Supreme Court concluded that Congress never intended to subject States to liability for deprivations of civil liberties when such suits would have otherwise been barred by the States' sovereign immunity. *Id.* at 66. The Supreme Court further held that a State's officials "acting in their official capacities" were not "persons" under § 1983, explaining: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official; rather, it is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id* at 71. (citations omitted).

The Supreme Court later clarified its holding in *Will,* making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo,* 502 U.S. 21 (1991). The former are immune from prosecution for money damages under § 1983, while the latter are not. The Court explained that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The significance of this distinction is key to the viability of a § 1983 complaint against a state official. As a general proposition, the doctrine of sovereign immunity bars

suit against a State. *Will,* 491 U.S. at 67. By extension, sovereign immunity precludes claims for money damages against state officials acting in their official capacities, including claims brought pursuant to § 1983. *Id.* at 71. In contrast, a suit for money damages brought against a state official, who acted in his personal capacity under color of state law, is not barred by the doctrine of sovereign immunity. *Hafer,* 502 U.S. at 30. Instead, a state official sued in his personal capacity under § 1983 must rely upon "personal immunities," such as qualified immunity, to bar suit. *Id.* at 31. Therefore, if the claims against Defendants Wolfe, Stepp, Phillips, and Diamond are "official-capacity" claims, they will enjoy the same immunity from money damages as the State of West Virginia. If the claims are "personal-capacity" claims, Defendants Wolfe, Stepp, Phillips, and Diamond will not be afforded the same protection, although they "may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.*; *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (recognizing that "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," while "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

The determination of whether a defendant has been named in his official or personal capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a plaintiff does not

14

allege capacity explicitly, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 F. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Plaintiff did not specify whether he intends to sue Defendants Wolfe, Stepp, Phillips, and Diamond in their official or personal capacities. Accordingly, the undersigned reviewed the amended complaint to make a fair determination. Plaintiff alleges that he complained to Wolfe, Stepp, and Phillips about being placed in segregation without cause and being subjected to grossly unsanitary conditions (i.e. feces, urine, spittle, two to three inches of stagnant river water with rotting food floating in it), yet none of these defendants did anything to correct the problems. Plaintiff also protested the deplorable conditions to Diamond, who ignored him, and Plaintiff states that he was attacked by two inmates in segregation who were allowed to leave their cells during Diamond's shift. (ECF No. 12 at 3, 9-13). Plaintiff further asserts that he was forced to use

a kiosk to file formal grievances, even though the defendants knew that Plaintiff had dyslexia, which prevented him from being able to spell and write effectively. (*Id.* at 7). He seeks a finding of individual liability against each defendant and requests compensatory and punitive damages.

Given all of the above, and considering that Plaintiff asserts specific claims against each defendant, it appears that Plaintiff intended to sue Defendants Wolfe, Stepp, Phillips, and Diamond in their personal capacities. However, to the extent that Plaintiff seeks money damages from these defendants for acts done in their official capacities, the undersigned **FINDS** that they are entitled to Eleventh Amendment sovereign immunity. Consequently, any claims against Defendants Wolfe, Stepp, Phillips, and Diamond in their official capacities should be dismissed.

On the other hand, the claims asserted against these defendants in their personal capacities should proceed, and Defendants Wolfe, Stepp, Phillips, and Diamond should **not** be removed from the style of the case. Defendants argue that Plaintiff alleges negligence rather than constitutional violations. As such, he fails to state a cognizable claim under § 1983. To the contrary, Plaintiff includes various allegations in the amended complaint that, when accepted as true, rise to the level of constitutional violations. He describes utterly appalling living conditions that led to his infection with Hepatitis B; a lack of medical care after he contracted the illness; physical assaults by other inmates that should not have been released from their cells at the time of the assaults; and placement in lock-up segregation ("the hole") for ninety five days simply because he had medical conditions that required him to wear leg braces and take heart medication. At this stage of the litigation, the undersigned **FINDS** that Plaintiff should be permitted to proceed with his personal capacity claims and conduct reasonable discovery.

### C.  Motion to Dismiss of the Village of Barboursville

The Village of Barboursville ("Barboursville") moves for dismissal under Fed. R. Civ. P. 12(b)(6) on the basis that the amended complaint fails to allege any action or inaction on its part that gives rise to a compensable claim. (ECF No. 31). Barboursville notes that Plaintiff alleges violations of his constitutional rights arising from the conditions to which he was subjected at the Western Regional Jail. Barboursville contends that the Western Regional Jail is managed, operated, and controlled by the DOC; therefore, Barboursville had no involvement in the underlying violations, and had no duty or authority to prevent them. Barboursville points out that its only nexus to this case is that the Western Regional Jail happens to be geographically located in the municipal corporate boundaries of Barboursville; however, that simple fact does not impose an obligation on Barboursville to monitor the operations of the Western Regional Jail. (*Id.*).

At the motions hearing, Plaintiff conceded that his complaint against Barboursville was based largely upon the Jail's geographic location. Plaintiff indicated that he believed Barboursville would have some duty to check the living conditions at the Jail to ensure that the facility was sanitary. However, Plaintiff provided no factual or legal support for that conclusion. Indeed, Plaintiff did not dispute Barboursville's contention that it had no such obligation, nor that it lacked authority to inspect the Jail.

West Virginia Code § 15A-3-12 provides that the commissioner of the Division of Corrections and Rehabilitation shall "manage, direct, control, and govern the prisons, jails, or correctional institutions of this state" including the Western Regional Jail. The commissioner is responsible, in relevant part, "to supervise the treatment, custody, and discipline of all inmates and residents and the maintenance of the institutions and their industries." W. Va. Code § 15A-3-4(a)(8). With respect to the sanitary conditions of a

17

correctional facility, the commissioner of the state's Bureau of Public Health is responsible for ensuring essential public health services to all citizens of the state. W. Va. Code § 16-1-6(d). This responsibility entails periodic inspections of institutions covered by the state's public health regulations, which include "public or private correctional facilities." W. Va. Code R.§§ 64-18-2.11, 64-18-4.1. The commissioner may delegate the duty of inspection and enforcement to a local board of health; however, according to its website, Barboursville is not a local board of health and has never been delegated such responsibilities. *See* www.barboursville.org/Departments. Furthermore, according to the West Virginia Department of Health and Human Resources, Bureau for Public Health, the local health department for Cabell County, West Virginia is the Cabell-Huntington Health Department. *See* https://dhhr.wv.gov/localhealth/pages/county. Consequently, as confirmed by the information available on these websites, Barboursville had no legal duty to inspect or monitor the living conditions at the Western Regional Jail.

Given that Plaintiff states no factual allegations in his amended complaint that implicate Barboursville, and Barboursville had no legal duty to Plaintiff, the undersigned **FINDS** that Plaintiff fails to state a claim against this defendant for which relief may be granted. Therefore, The Village of Barboursville should be dismissed from this action and removed from the style of the case.

### D.  Motion of the State of West Virginia, the DOC, Wolfe, Stepp, Phillips and Diamond to Designate their Motion to Dismiss as unopposed and to Dismiss the Amended Complaint for Failure to Comply with a Court Order

The defendants, with the exception of Barboursville, filed a second motion in which they argue that the amended complaint should be dismissed against them, because Plaintiff failed to comply with a Court order. (ECF No. 35). On December 17, 2018, the

undersigned entered an Order advising Plaintiff that he had the right to respond to the defendants' motion to dismiss and that a failure to respond could support a conclusion that the defendants' contentions were undisputed and might result in dismissal of the amended complaint. (ECF No. 29). Plaintiff did not file a response. However, the Order **did not require** a response; consequently, Plaintiff did not fail to comply with the Order. He simply chose not to brief the issues raised by the defendants in their motion to dismiss.

At the status conference, Plaintiff explained that he has dyslexia, which makes it difficult for him to write. For that reason, instead of responding to the motions to dismiss, Plaintiff filed a motion seeking the appointment of counsel, which was not ruled on prior to the status conference. Plaintiff has since been released from custody and is living with family members who can assist him in prosecuting the case. Therefore, the undersigned **FINDS** no merit to the motion to designate and dismiss. In any event, since the original motion to dismiss primarily asked that the claims against the State of West Virginia and the DOC, as well as the official capacity claims against Defendants Wolfe, Stepp, Phillips, and Diamond be dismissed, the defendants have essentially received in these proposed findings and recommendations the outcome they requested, making their motion to designate and dismiss moot.

## IV.    <u>Proposal and Recommendation</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the following findings and **RECOMMENDS** that Motion to Dismiss filed by Defendants State of West Virginia, the DOC, Wolfe, Diamond, Stepp, and Phillips, (**ECF No. 27**), be **GRANTED**, in part, and **DENIED**, in part; the Rule 12(b)(6) Motion to Dismiss filed by The Village of Barboursville, (**ECF No. 31**), be **GRANTED**; and the Motion of Defendants Wolfe, State of West Virginia, the

DOC, Diamond, Stepp and Phillips to Designate their Motion to Dismiss as Unopposed and to Dismiss the Complaint for Failure to Comply with the Order of the Court, (**ECF No. 35**), be **DENIED**. The undersigned further **RECOMMENDS** that the claims against the DOC, the State of West Virginia, and The Village of Barboursville be **DISMISSED**, and those defendants be **REMOVED** from the style of the case; that claims against Defendants Wolfe, Stepp, Phillips, and Diamond in their official capacities be **DISMISSED**; and that the claims against Defendants Wolfe, Stepp, Phillips, and Diamond in their personal capacities **REMAIN PENDING** to allow the parties an opportunity to conduct discovery.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure. The parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing

parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, counsel of record, and any unrepresented party.

**FILED:** May 8, 2019

Cheryl A. Eifert
United States Magistrate Judge

21